UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VERNON NORMAN EARLE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:06-cv-00072 (PLF) |
| WASHINGTON, D.C. POLICE DEPT. et al., | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Vernon Earle respectfully submits this memorandum in opposition to the motion for summary judgment filed by defendant the District of Columbia (the "District").

**INTRODUCTION**

This case squarely presents the Court with questions of law bearing on whether foreign nationals will have access to their government's consular officials when charged with crimes in the United States and whether they will have any recourse when they are deprived of such access. Mr. Earle is a Jamaican citizen who was arrested, convicted, and imprisoned by the District of Columbia. Throughout his arrest and subsequent imprisonment, he was never advised of his right under the Vienna Convention on Consular Relations ("VCCR") to contact an official at the Jamaican consulate. He become aware of this right nearly twenty years after his arrest, after which he promptly filed a complaint with this Court. Had he been apprised of his VCCR rights earlier, he would have contacted the Jamaican consulate and sought it assistance with his criminal case.

The District's motion for summary judgment rests on an erroneous application of relevant law and an interpretation of the VCCR on a question of first impression which this Court should not adopt. Specifically, the District would have this Court find that the statute of limitations should run for an escaped prisoner in exactly the same manner as the limitations period for a legally freed prisoner. It also urges a finding that the VCCR, while conferring an obligation on the government to notify foreign nationals of their right to consular access, does not establish any mechanism by which a violation of the VCCR can be redressed. Of course, a "right" without any means of enforcement is hardly a right at all.

As discussed in more detail below, the motion should be denied because (1) Article 36 of the VCCR confers an individually-enforceable right on foreign nationals and (2) the statute of limitations on Mr. Earle's claim under 42 U.S.C. § 1983 for violation of his VCCR rights has been tolled during his imprisonment, unaffected by his brief escape.

**FACTUAL BACKGROUND**

Mr. Earle is a citizen of Jamaica who was living in the United States when he was arrested on June 3, 1985. Affidavit of Vernon Norman Earle ("Earle Aff.") ¶¶ 2-3 (attached hereto as Exhibit 1). On June 13, 1985, Mr. Earle was arrested by Defendants Michael J. Will and Richard Green. Earle Aff. ¶ 3. Mr. Earle was then taken to the homicide office in the Seventh District Detectives' Office of the District of Columbia Metropolitan Police Department ("MPD"). Earle Aff. ¶ 4. Later that day, he was questioned by Defendants Rocco Cianciotti and Forest E. Hamlin in the CID unit of the MPD. Earle Aff. ¶ 4.

Neither Messrs. Will, Green, Cianciotti, nor any other officer or representative of the MPD ever informed Mr. Earle of his right to contact the Jamaican Consulate at the time of his arrest, or at any time while Mr. Earle was in their custody. Earle Aff. ¶¶ 5-7. As a result, Mr.

Earle was unaware of his right to contact the Jamaican Consulate at the time of his arrest and throughout the period that he remained in Defendants' custody.  Earle Aff. ¶ 5.

On or about April 10, 1986, Mr. Earle was indicted for several crimes in the Superior Court of the District of Columbia and, in 1987, was convicted.  Earle Aff. ¶¶ 7-8.  At no time before or during his arraignment, trials, sentencing, or other court proceedings, during which Mr. Earle remained solely in Defendants' custody, did any District of Columbia or MPD officer or representative inform Mr. Earle of his rights under the Vienna Convention to contact a Jamaican consular official.  Earle Aff. ¶¶ 7-10.

In fact, Mr. Earle first became aware of his rights under the Vienna Convention, and the obligations that the convention imposed on Defendants, in 2004, nearly twenty years after he was arrested and detained by Defendants.  Earle Aff. ¶ 11. Had he known of his Vienna Convention rights, Mr. Earle would have contacted the Jamaican Consulate and sought its assistance.  Earle Aff. ¶ 11.

## ARGUMENT

### I.  STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment under Rule 56 may be granted only if (1) there is no genuine issue as to any material fact and (2) the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  Both prongs must be met for a court to grant summary judgment.  See Sherwood v. Washington Post, 871 F.2d 1144, 1145 (D.C. Cir. 1989); F.D.I.C. v. Bender, 127 F.3d 58, 63 (D.C. Cir. 1997).  A dispute about a material fact is genuine, and should preclude summary judgment, if a reasonable jury could return a verdict in favor of the non-moving party.  See Liberty Lobby, 477 U.S. at 248.  The burden is on the

moving party to demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Liberty Lobby, 477 U.S. at 255; see also Washington Post Co. v. United States Dept. of Health and Hum. Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

Even in the absence of disputes of material fact, summary judgment is only appropriate when the movant has established that the undisputed facts entitle it to judgment as a matter of law. See Fed. R. Civ. P. 56(c); F.D.I.C. v. Bender, 127 F.3d 58, 63 (D.C. Cir. 1997) ("If we find there to be no controversy with regard to the material facts, we focus on whether the district court correctly applied the relevant law."); Sherwood, 871 F.2d at 1145 (a "court must determine whether any genuine issue of material fact exists, or, if not, whether the law was properly applied."). This is precisely the District's failure in its instant motion. While Mr. Earle does not dispute that he escaped from prison and was subsequently captured (the only facts the District claims are undisputed), those facts do not entitle the District to judgment as a matter of law.

**II.        THE VCCR CREATES INDIVIDUALLY ENFORCEABLE RIGHTS.**

The District claims that it is entitled to summary judgment because the VCCR does not create individually enforceable rights. Def.'s Mem. of Points and Authorities in Support of Mot. for Summary Judgment, filed Dec. 28, 2009 [D.E. 36] ("MSJ"), at 7-10. As the District impliedly recognizes, whether the VCCR creates individually enforceable rights is a question of first impression for this Court. The Supreme Court has yet to issue a controlling opinion on the issue, although it has expressed an inclination to find that the VCCR confers individually enforceable rights on foreign nationals. See Breard v. Greene, 523 U.S. 371, 376

(1998) (noting that the VCCR "arguably confers on an individual the right to consular assistance following arrest"). The courts of appeals which have reached the issue are split; the D.C. Circuit has not yet spoken. Specifically, in the context of both civil and criminal proceedings, some courts have found that the VCCR creates individually enforceable rights, see, e.g., Jogi v. Voges, 480 F.3d 822, 835 (7th Cir. 2007); Standt v. City of New York, 153 F. Supp. 2d 417, 427 (S.D.N.Y. 2001); United States v. Hongla-Yamche, 55 F. Supp. 2d 74, 78 (D. Mass. 1999), while others have concluded it does not, see Gandara v. Bennett, 528 F.3d 823, 827 (11th Cir. 2008); Mora v. New York, 524 F.3d 183, 209 (2d Cir. 2008); Cornejo v. County of San Diego, 504 F.3d 853, 863-64 (9th Cir. 2007); United States v. Emuegbunam, 268 F.3d 377, 392 (6th Cir. 2001); United States v. Jimenez-Nava, 243 F.3d 192, 198 (5th Cir. 2001).

The reasoning of the courts which have found that Article 36 of the VCCR confers individually enforceable rights upon detained nationals like Mr. Earle is far more persuasive and should be adopted by this Court in this question of first impression. As set forth below, the text of Article 36 clearly requires a foreign national to be informed of "his rights" under the VCCR. See Vienna Convention on Consular Relations ("VCCR") art. 36(1)(b), opened for signature Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. Moreover, the legislative history and post-ratification operation of the VCCR in the United States continually expresses concern for the consular notification rights of individual foreign nationals.

    **A.**    **The Text of Article 36 Unambiguously Confers Individually Enforceable Rights.**

For an individual right to be inferred from Article 36, the right must be clearly conferred in the text of Article 36 itself. Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002); Jogi, 480 F.3d at 828. This analysis involves examining whether Article 36 "by its terms grants

private rights to any identifiable class" and whether the text of Article 36 "is phrased in terms of the persons benefitted." Jogi, 480 F.3d at 828.

The text of Article 36 clearly and unambiguously provides foreign nationals with an individual right to consular notification and assistance. See Jogi, 480 F.3d at 833; see also United States v. Li, 206 F.3d 56, 71 (1st Cir. 2000) (en banc) (Torruella, C.J., concurring in part, dissenting in part) (noting that the language of Article 36 is "anything but ambiguous"). Article 36 provides that if a foreign national "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner." VCCR art. 36(1)(b). Article 36(1)(b) then plainly states that "[t]he said authorities shall inform the person concerned without delay of his rights under this subparagraph." Id. (emphasis added). This language is "'mandatory and unequivocal'" and "'emphasizes that the right of consular notice and assistance is the citizen's.'" Jogi, 480 F.3d at 833 (quoting Breard v. Pruett, 134 F.3d 615, 622 (4th Cir. 1998) (Butzner, J., concurring)); see also Li, 206 F.3d at 72 (Torruella, C.J., concurring in part, dissenting in part) ("I have some difficulty envisioning how it is possible to frame language that more unequivocally establishes that the protections of Article 36(1)(b) belong to the individual national, and that the failure to promptly notify him/her of these rights constitutes a violation of these entitlements by the detaining authority."); Hongla-Yamche, 55 F. Supp. 2d at 77 (finding that the text of Article 36 "clearly refers to the existence of an individual right").

Notwithstanding the unambiguous language of Article 36, the District points to the VCCR's Preamble, which provides in part that "[t]he purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by

consular posts on behalf of their respective States." VCCR pmbl. Relying on the Preamble to introduce ambiguity into Article 36, however, misses the mark in several respects. First, even though the Preamble may accurately reflect the nature and purpose of some VCCR provisions, it does not accurately describe Article 36. In fact, "there is little reason to think that it has any application at all to Article 36." Jogi, 480 F.3d at 833. Second, under standard rules of treaty interpretation, there is no need to turn to the general language of the Preamble because the specific text of Article 36 is unambiguous. Id. Third, when viewed in relation to the VCCR as a whole, "the Preamble's reference to 'individuals' is best understood as referring to consular officials rather than civilian foreign nationals." Standt, 153 F. Supp. 2d at 425; see also Li, 206 F.3d at 72 (Torruella, C.J., concurring in part, dissenting in part) (observing that the Preamble "refers to the privileges and immunities of 'diplomatic agents' qua diplomatic agents, and not with respect to the individual rights established in Article 36(1)(b) for the benefit of detained nationals").

  **B. The VCCR's Legislative History Strengthens a Reading of Article 36 that it Confers Individual Rights.**

In addition to the unambiguous language of Article 36, the VCCR's legislative history establishes that Article 36 confers individually enforceable rights on foreign nationals. As the Seventh Circuit recognized in Jogi, "[t]he negotiation history of Article 36 is filled with concern about the question of individual rights." Jogi, 480 F.3d at 834. For example, during the debates on the VCCR, Venezuela proposed eliminating the individual right of consular communication, but this amendment was withdrawn after receiving significant opposition from other countries. Id. at 834-45. Additionally, the United States proposed language in the VCCR that was "intended to 'protect the rights of the national concerned.'" Id. at 835 (citation omitted). The extensive debate regarding the VCCR, particularly Article 36, reflects a concern not only for

consular rights but also for the rights of individual foreign nationals.  <u>Li</u>, 206 F.3d at 73-74 (Torruella, C.J., concurring in part, dissenting in part) (recounting the Vienna Convention debates and pointing to statements from numerous delegates to the Convention).  Indeed, after the VCCR was adopted, Secretary of State William Rodgers noted in his letter transmitting a certified copy of the Convention to the President that Article 36 "requires that authorities of the receiving State inform the person detained of <u>his right</u> to have the fact of his detention reported to the consular post concerned and of <u>his right</u> to communicate with that consular post."  <u>Jogi</u>, 480 F.3d at 830 (quoting Letter from William P. Rodgers, U.S. Secretary of State, to Richard M. Nixon, U.S. President (Apr. 18, 1969) (emphasis in <u>Jogi</u>)).  Simply put, the VCCR's legislative history "'supports the interpretation that Article 36 was intended to confer individual rights on foreign nationals.'"  <u>Standt</u>, 153 F. Supp. 2d at 426 (quoting Mark J. Kadish, <u>Article 36 of the Vienna Convention on Consular Relations: A Search for the Right to Consul</u>, 18 Mich. J. Int'l L. 565, 599 (1997)).

        **C.**     **The Subsequent Operation of the VCCR Further Supports a Reading of Article 36 that it Creates Individually Enforceable Rights.**

Regulations promulgated by the U.S. Department of Justice (DOJ) and the U.S. Department of Homeland Security (DHS) and notices issued by the U.S. Department of State further recognize that Article 36 confers individually enforceable rights upon foreign nationals. For example, DHS regulations provide that "[e]very detained alien <u>shall be notified</u> that he or she may communicate with the consular or diplomatic officers of the country of his or her nationality in the United States."  5 C.F.R. § 236.1(e) (2009) (emphasis added) (further providing that existing treaties with certain countries "require immediate communication with appropriate consular or diplomatic officers whenever nationals [of certain enumerated countries] are detained in removal proceedings").  Under DOJ regulations, "[i]n every case in which a foreign national is

arrested the arresting officer <u>shall</u> inform the foreign national that his consul will be advised of his arrest <u>unless he does not wish such notification to be given</u>." 28 C.F.R. § 50.5(a)(1) (emphasis added). Finally, in notices sent to state and local officials, the State Department consistently reminds officials of their consular notification obligations under the VCCR. See <u>Jogi</u>, 480 F.3d at 835.

Additionally, the United States has "repeatedly invoked Article 36 on behalf of American citizens detained abroad who have not been granted the right of consular access." <u>Id.</u>; <u>United States v. Superville</u>, 40 F. Supp. 2d 672, 676 & n.3 (D. Vi. 1999) (noting interventions by the United States in Iran in 1979 and Nicaragua in 1986).

Accordingly, Article 36 confers individually enforceable rights to an identifiable class of persons – foreign nationals such as Mr. Earle who are in the United States and are citizens of countries which are signatories to the VCCR – and its text is expressly "phrased in terms of the persons benefitted." <u>Jogi</u>, 480 F.3d at 835.

### III.   MR. EARLE'S CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

#### A.   Mr. Earle's Claim Was Tolled by His Arrest and Incarceration.

While the District is correct that the statute of limitations for Mr. Earle's claim under Section 1983 is three years, its contention that tolling of the period ceased with Mr. Earle's escape rests on a stretched application of relevant law. Under District of Columbia law, if a person is imprisoned at the time a cause of action accrues, the statute of limitations is tolled until he is released. D.C. Code § 12-302(a)(3); <u>Fernandors v. District of Columbia</u>, 382 F. Supp. 2d 63, 69 (D.D.C. 2005). When a claim arises from the conduct of police officers during an arrest, the statute of limitations is tolled during the time of imprisonment resulting from the arrest. See <u>District of Columbia v. Tinker</u>, 691 A.2d 57 (D.C. 1997) ("There is no dispute that the statute

was tolled by section 12-302(a)(3) from the moment of Tinker's arrest."); Fernandors, 382 F.Supp.2d at 69.  Thus, the statute of limitations was tolled beginning with Mr. Earle's arrest on June 13, 1985, a conclusion the District does not dispute.  Instead, the District rests its entire argument that the statute of limitations has run on a single case with key facts distinguishable from those underlying this lawsuit.  See MSJ at 5-6 (citing Tinker, 691 A.2d at 65).

In Tinker, a man was released from prison because prison authorities thought it was time for him to be paroled.  691 A.2d at 64.  As it turned out, the prison authorities had miscalculated his parole date and re-arrested the man one month after his release.  Id.  The court held that his parole, whether proper or not, terminated the tolling period on his claim of excessive use of force.  Id.  The court further held that re-arrest does not toll the statute again.  Id. To justify this conclusion, the court asserted that "once a prisoner is released . . . nothing prevents the plaintiff from commencing the action at that time."  Id. at 65 (quoting Hamil v. Vidal, 140 Ill.App.3d 201, 204 (Ill. App. Ct. 1985) (emphasis added)).   This reasoning is inapposite to Mr. Earle's case.

In Tinker, the prisoner's release may have ultimately been invalid (an issue the court did not decide), but it was lawful.  Once the prisoner had been released, he had no obstacle to filing suit other than those facing an ordinary prospective litigant.  In contrast, when Mr. Earle escaped from prison, he faced a very significant impediment to filing a civil complaint – his re-arrest and return to prison.  Mr. Earle thus faced a disability of the same type as when he was imprisoned.  If the District's position were adopted, it would mean that if a prisoner escaped for five minutes on the first day of his imprisonment, the statute of limitations would not be tolled for the remainder of the prisoner's confinement and would run as if the individual had never been imprisoned.  Surely, the Council of the District of Columbia did not intend such a result

when it enacted a law tolling the statute of limitations for a prisoner until "the disability is removed."  See D.C. Code § 12-302(a)(3).

>   **B.     Mr. Earle's Cause of Action Did Not Accrue Until He Learned of His Vienna Convention Rights.**

Even if the Court were to conclude that, as a general matter, statutes of limitations are not tolled for a prisoner who escapes from prison, however temporarily, it should still find that Mr. Earle's complaint was timely filed.  Because the Defendants had an affirmative duty to advise Mr. Earle of his VCCR rights yet never did so, their fraudulent concealment establishes the time Mr. Earle's cause of action accrued as the date on which he learned of his rights.  Similarly, Defendants' failure to advise Mr. Earle of these rights constituted a continuing a violation which also tolls the running of the statute of limitations until 2004 when Mr. Earle learned of his VCCR rights.

>   1.     <u>Defendants Fraudulently Concealed Mr. Earle's VCCR Rights From Him.</u>

"Read into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit."  <u>Smith v. Nixon</u>, 606 F.2d 1183, 1190 (D.C. Cir. 1979).  Because Defendants fraudulently concealed Mr. Earle's rights under the VCCR from him, the statute of limitations tolled until he learned of those rights in 2004.

Generally, in order to demonstrate fraudulent concealment, "the plaintiff must show that the defendant engaged in an act of concealment separate from the wrong itself." <u>Hobson v. Wilson</u>, 737 F.2d 1, 33 (D.C. Cir. 1984).  However, in certain circumstances, defendants' silence does constitute fraudulent concealment.  Namely, "Silence does toll the statute of limitations . . . if the defendant has an affirmative duty to disclose the relevant

information to the plaintiff." Sprint Commc'ns Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (citing Smith, 606 F.2d at 1190). It is well established that this affirmative duty may arise out of statutes, see Smith, 606 F.2d at 1190, or treaties. See Reid v. Covert, 354 U.S. 1, 18 (1957) (noting that the Supreme Court has "repeatedly taken the position that an Act of Congress is on a full parity with a treaty") (citations omitted). The essence of the right provided by Article 36 of the Vienna Convention is that the arresting authorities "shall inform the person concerned without delay of his rights under this sub-paragraph," including contact with consular officials from his country of citizenship. Jogi, 425 F.3d at 380 (quoting VCCR Art. 36, ¶ 1(b)). This mandatory language confers an affirmative duty on arresting officers to apprise a foreign national of his right to consular access. Because Defendants failed to perform this affirmative duty and did not inform Mr. Earle of his rights under the VCCR, their silence constitutes fraudulent concealment and tolls the statute of limitations until the date on which Mr. Earle became aware of those rights.

   2.   Defendants' Failure to Advise Mr. Earle of His VCCR Rights Constituted a Continuing Violation.

Mr. Earle has been continuously detained without ever being advised of his rights under the Vienna Convention. Earle Aff. ¶¶ 7-10. An "unlawful detention . . . [in] violation of the laws of the United States . . . and the law of nations" regarding consular rights represents a continuing violation of the detainee's rights and, as such, tolls the statute of limitations. Von Dardel v. Union of Soviet Socialist Republics, 623 F. Supp. 246, 259 (D.D.C. 1985), vacated on other grounds 736 F. Supp. 1 (D.D.C. 1990). Thus, because Defendants have never advised Mr. Earle of his VCCR rights, in violation of a ratified treaty, the statute of limitations was tolled at least until the time when Mr. Earle learned of his VCCR rights. Because Mr. Earle first learned

of his rights under Article 36 of the VCCR in 2004, the statute of limitations would not have run until 2007, well after his complaint was filed on January 13, 2006.

## CONCLUSION

For all the foregoing reasons, plaintiff Vernon Earle respectfully requests that this Court deny the District's motion for summary judgment. To the extent the Court has additional questions or concerns, or is inclined to entertain the relief the District seeks, Mr. Earle further requests, pursuant to Local Civil Rule 7(f), that the Court permit oral argument on the District's motion in order to more fully address such issues.

Respectfully submitted,

/s/ Peter C. Lallas
Peter S. Spivack (D.C. Bar #453731)
Peter C. Lallas (D.C. Bar # 495944)
HOGAN & HARTSON LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600 (T)
(202) 637-5910 (F)

*Counsel for Plaintiff Vernon Norman Earle*

Dated:  March 1, 2010