# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VERNON NORMAN EARLE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-0072 (PLF) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

ORDER

In accordance with the Opinion issued this same date, it is hereby

ORDERED that Defendant the District of Columbia's Motion for Summary Judgment [Dkt. # 36] is GRANTED; and it is

FURTHER ORDERED that judgment is entered for the defendant.

This is a final appealable order. See Fed. R. App. P. 4(a).

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: June 29, 2011

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VERNON NORMAN EARLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-0072 (PLF) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

OPINION

      Plaintiff, a foreign national currently imprisoned in United States Penitentiary (USP) McCreary in Pine Knot, Kentucky, has commenced this action under 42 U.S.C. § 1983, alleging that defendants – the District of Columbia Metropolitan Police Department and several officers thereof – violated his right to consular notification under Article 36 of the Vienna Convention on Consular Relations. Defendants have moved for summary judgment, arguing that Article 36 does not provide plaintiff with a private right of action, and, regardless of whether it could, plaintiff's claims are barred by the applicable three-year statute of limitations. Plaintiff responds that Article 36 does provide a private right of action, that the date on which the cause of action accrued occurred withing the limitations period, or that the statute of limitations should be tolled due to plaintiff's imprisonment and defendant's alleged fraudulent concealment.

      The Court will not decide whether Article 36 provides plaintiff with a private right of action that is actionable under Section 1983, because plaintiff's claims are untimely. For the reasons stated in this Opinion, the Court concludes that plaintiff's cause of action accrued when he was arrested on June 13, 1985, not at some later date under the continuing violation

doctrine; that the statute of limitations was tolled by statute due to plaintiff's imprisonment only until plaintiff escaped from prison on September 19, 1988; and that the statute of limitations was not tolled by the asserted fraudulent concealment by defendant. Because plaintiff did not commence suit until 2006, defendants' motion for summary judgment will be granted

## I.  PROCEDURAL HISTORY

Plaintiff, a citizen of Jamaica, originally commenced this action under 42 U.S.C. § 1983 against the Metropolitan Police Department; the United States Attorney for the District of Columbia; attorney James Joyner; and the Immigration and Naturalization Service. *See* Complaint at 4 [Dkt. # 1]. Plaintiff alleged that these defendants violated his right to consular notification under Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention" or "VCCR") by failing to notify Jamaican consular officers of his 1985 arrest in the United States. *Id.* at 5–6. On January 13, 2006, another judge of this Court *sua sponte* dismissed this action, concluding that plaintiff's claim was barred by the applicable three-year statute of limitations. Memorandum Opinion [Dkt. # 3]; Order [Dkt. # 4]. Plaintiff successfully appealed that dismissal; the court of appeals remanded the case for further proceedings "because the District Court failed to consider the possibility that the statute was tolled." *Earle v. Washington D.C. Police Dept.*, 298 F. App'x 10, 11 (D.C. Cir. 2008).

Plaintiff, through counsel, has since amended his complaint to bring an action against the District of Columbia, as well as against the former Chief of Police, several detectives, and several officers of the Metropolitan Police Department. *See* First Amended Complaint ¶¶ 2–8 [Dkt. # 35] [hereinafter "1st Am. Compl."]. Plaintiff, however, was unable to locate and

serve these individually named defendants within a reasonable period of time. *Id.* ¶ 9. The Court therefore dismissed all claims against them. *See* Order dated June 29, 2011 [Dkt. # 46]. This action is now before the Court on a motion for summary judgment filed by the sole remaining defendant, the District of Columbia. *See* Defendant the District of Columbia's Motion for Summary Judgment [Dkt. # 36].

## II. STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the pleadings and the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## III. FACTS

Plaintiff is a citizen of Jamaica. Affidavit of Vernon Norman Earle ¶ 2 [Dkt. # 40-1] [hereinafter "Earle Aff."]; Memorandum of Points and Authorities in Support of Defendant the District of Columbia's Motion for Summary Judgment, at 1 [Dkt. # 36]

3

[hereinafter "Def.'s Mem."].  Plaintiff was arrested on June 13, 1985, by officers of the Metropolitan Police Department.  Earle Aff. ¶ 4; Pl.'s Mem. at 1.  "In April, 1987, Plaintiff was convicted in the District of Columbia Superior Court[,] and on April 14, 1987, was sentenced to two consecutive terms of fifteen (15) years to life after having been convicted on two counts of assault with intent to kill while armed." *Earle v. United States*, No. 04-cv-431, 2005 WL 2095691, at *1 (E.D. Ky. Aug. 29, 2005).  Thereafter, "[o]n October 22, 1987, Earle was sentenced to two consecutive terms of twenty (20) years to life after having been convicted of first degree murder while armed, and three (3) to nine (9) years each after having been convicted of two counts of assault with a dangerous weapon." *Id.*

Plaintiff began serving his sentences at the Lorton Reformatory, but then escaped from Lorton on September 19, 1988.  Statement of Material Facts not in Dispute ¶ 1 [Dkt. # 36] [hereinafter "Def.'s Facts"]; 1st Am. Compl. ¶ 16; Plaintiff Vernon Earle's Counter-Statement of Material Facts ¶ 1[Dkt. # 40-2] [hereinafter "Pl.'s Facts"]; *see also* Declaration of Patricia B. Britton ¶ 3 [Dkt. # 36-1] [hereinafter "Britton Decl."].  Plaintiff was recaptured on March 7, 1989.  Def.'s Facts ¶¶ 2–3; Pl.'s Facts ¶¶ 2–3; *see also* Britton Decl. ¶ 4.  Plaintiff is currently serving his sentences at USP McCreary.  Britton Decl. ¶ 5; Fed. Bureau of Prisons, *Inmate Locator*, http://www.bop.gov/iloc2/LocateInmate.jsp (search for Register Number 09814-004).

IV.  ANALYSIS

Plaintiff's action, brought under 42 U.S.C. § 1983, is premised on the theory that the Vienna Convention provides foreign nationals with a private right of action for violations of the consular notification provisions of Article 36.  *See* 1st Am. Compl. ¶ 14.  The parties agree

4

that in the District of Columbia, a Section 1983 claim must be brought within three years of the date on which the cause of action accrues, unless the limitations period is tolled or otherwise not applied.  *See* D.C. Code § 12-301(8); *Singletary v. District of Columbia*, 351 F.3d 519, 530 n.11 (D.C. Cir. 2003); Plaintiff's Opposition to Defendant the District of Columbia's Motion for Summary Judgment, at 9 [Dkt. # 40] [hereinafter "Pl.'s Opp'n"].  The Court concludes that while the running of the statute of limitations was initially tolled by statute during plaintiff's imprisonment, such tolling ended when plaintiff escaped on September 19, 1988 and did not recommence on his recapture.  Plaintiff therefore was required to bring suit no later than September 19, 1991.

### A. Continuing Violation Doctrine

The gravamen of plaintiff's complaint under Section 1983 is that "Defendants did not inform Plaintiff of his right to contact the Jamaican Consulate at the time of his arrest, or at any time while Plaintiff was in Defendants' custody."  1st Am. Compl. ¶ 18.  Plaintiff argues that his cause of action did not accrue until he learned of the existence of that right in 2004 because defendants fraudulently concealed the existence of that right from him in contravention of their affirmative duty to disclose the existence of that right to him.  Pl.'s Opp'n at 11–12.  Plaintiff also argues that defendants' continued failure to inform him of that right throughout his pretrial detention, trial, and post-trial imprisonment "constituted a continuing violation which also tolls the running of the statute of limitations until 2004." *Id.* at 11–13.

The date by which an action must be brought depends on the date on which the cause of action accrues and whether any tolling doctrine applies to forestall or interrupt the

running of the limitations period. "An action accrues when it first comes into existence as an enforceable claim or right." *Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.D.C. 2006) (citing *United States v. Lindsay*, 346 U.S. 568, 569 (1954)). Under the continuing violation doctrine, this accrual rule is applied to permit a claim to be brought concerning a series of acts that collectively form the basis of a cause of action, even if some of those acts fall outside of the limitations period. *Law v. Continental Airlines Inc.*, 293 F. Supp. 2d 56, 60 (D.D.C. 2003). This doctrine applies when the complained of act "'is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period,' typically because it is only its cumulative impact . . . that reveals its illegality." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997) (quoting *Dasgupta v. Univ. of Wisc. Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997)). Thus, under the continuing violation doctrine, a cause of action for a continuing violation does not accrue until that cumulative impact can be felt.

As with any cause of action, one based on a continuing violation comes into existence when actionable facts come into existence. In the case of a continuing violation, the cause of action accrues continuously, because earlier acts combine with later acts in some series of violations that constitutes an actionable injury; discrete acts, even if they cause a lingering injury, do not necessarily merge to form a continuing violation. *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) ("A lingering effect of an unlawful act is not itself an unlawful

act.") (internal quotation marks omitted). The cause of action thus accrues once the cumulative impact of these acts can be felt, and the limitations period only begins to run at that point.[1]

Plaintiff alleges that defendants "knew or should have known that Plaintiff was a foreign national" at the time of his arrest. 1st Am. Compl. ¶ 17. Plaintiff's cause of action therefore accrued on the day of his arrest – June 13, 1985 – when he should have been but allegedly was not informed of his right to contact the Jamaican consulate, because that is the date on which he held an enforceable right under Article 36 of the Vienna Convention (assuming *arguendo* that such right exists). *See, e.g.*, *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (concluding in a case brought under Section 1983 that "the claim accrued at least as early as . . . when the arresting agents failed to inform [the plaintiff] of his Vienna Convention rights"); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 (D.N.J. 2003) (concluding in a case brought under the Federal Tort Claims Act that "Plaintiff's claim accrued when the arresting agents failed to advise him of his rights under Article 36").[2]

---

[1] Plaintiff asserts that defendant's "fraudulent concealment establishes the time that Mr. Earle's cause of action accrued as the date on which he learned of his rights," but he also asserts that "[b]ecause Defendants fraudulently concealed Mr. Earle's rights under the VCCR from him, the statute of limitations was tolled." Pl.'s Opp'n at 11. Plaintiff thus intermingles principles of accrual and tolling. A more delineated conception holds that, regardless of whether a defendant fraudulently concealed actionable facts from a plaintiff, a cause of action nonetheless came into existence—*i.e.*, accrued—the moment that those facts also came into existence. The question of whether the limitations period then began to run immediately or was forestalled by such concealment is thus one of tolling, not of accrual. *See Smith v. United States*, 518 F. Supp. 2d 139, 156 n.10, 160-61 & n. 12 (D.D.C. 2007) (distinguishing between equitable tolling and claim accrual)*; Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 52–53 (D.D.C. 2006) (noting that tolling for fraudulent concealment is a form of equitable tolling).

[2] Article 36 directs that a foreign national be informed of his right to consular access "without delay." Vienna Convention on Consular Relations, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 100–01. The U.S. Department of State advises that such "notification must occur as soon as reasonably possible under the circumstances." U.S. Dep't of State, *Consular*

7

Plaintiff argues, however, that the continuing violation doctrine justifies the apparently untimely filing of his suit. Pl.'s Opp'n at 11–13. To successfully assert this doctrine, plaintiff must show (1) "that 'an actual violation . . . occurred during the statutory [limitations] period,'" and (2) that this actual violation, as well as the earlier violations which occurred outside the limitations period were part of a series of related acts. *Law v. Continental Arilines Inc.*, 293 F. Supp. 2d at 60 (quoting *Palmer v. Kelly*, 17 F.3d 1490, 1496 (D.C. Cir. 1994)). As to the two requirements of *Law*, plaintiff simply argues that he "has been continuously detained without ever being advised of his rights under the Vienna Convention." Pl.'s Opp'n at 12. The Court infers from this that plaintiff argues that every single day that he was in custody, defendant violated the Vienna Convention by failing to inform plaintiff of his rights thereunder. *See* Pl.'s Opp'n at 12–13. Thus, says plaintiff, an actual violation occurred within three years of the filing of his suit on the last day that plaintiff was unaware of his rights. *See id.* And, he argues further, the previous days' violations, many of which occurred more than three years before the filing of plaintiff's suit, were all part of one grand continuing violation: the continual nondisclosure of plaintiff's rights under the Vienna Convention. *See id.* Finally, to show that the continuing violation doctrine can apply in a case such as this, plaintiff points to *Von Dardel v. Union of Soviet Socialist Republics*, 623 F. Supp. 246, 259 (D.D.C. 1985), *vacated on other grounds*, 736 F.Supp. 1 (D.D.C. 1990), contending that "an 'unlawful detention . . . [in] violation of the laws of the United States . . . and the law of nations' regarding consular rights represents a continuing

---

*Notification and Access* 21 (3d ed. 2010), *available at* http://travel.state.gov/pdf/cna/CNA_Manual_3d_Edition.pdf. Therefore, a detaining entity "must inform a foreign national of the possibility of consular notification by or at the time of detention" if, by or at that time, a detainee's "identity and foreign nationality can be confirmed." *Id.*

8

violation of the detainee's rights and, as such, tolls the statute of limitations." Pl.'s Opp'n at 12 (quoting *Von Dardel v. Union of Soviet Socialist Republics*, 623 F. Supp. at 259).

*Von Dardel* concerned the alleged unlawful imprisonment of a Swedish diplomat by the Union of Soviet Socialist Republics. There the court held that such imprisonment constituted an "ongoing tort" for which the statute of limitations does not begin to run until "the last act constituting the tort is complete." *Von Dardel v. Union of Soviet Socialist Republics*, 623 F.Supp. at 260. The instant case is distinguishable. Plaintiff's alleged injury – his lack of knowledge of his Vienna Convention rights and his corresponding failure to exercise them – was a continuing ill effect from an original violation; it was not the product of a continuing violation itself. Indeed, every federal court to have considered whether alleged continuing violations of the Vienna Convention combine to result in a later accrual date have concluded that such a violation can be considered to have continued, if at all, "only until the date of . . . conviction," not the later date on which the plaintiff discovered his rights under the Vienna Convention while serving his sentence. *Bieregu v. Ashcroft*, 259 F. Supp. 2d at 355; *accord McPherson v. United States*, 392 F. App'x at 944. The Court concludes that there was no continuing violation in this case. But even if the Court were to conclude otherwise, plaintiff's claim accrued, at the latest, on the date of his conviction – in April 1987 – over 18 years before plaintiff commenced this case.

### B. Tolling During Plaintiff's Imprisonment Until Plaintiff's Escape

Plaintiff and defendant agree that the statute of limitations was initially tolled upon plaintiff's arrest and during his imprisonment under D.C. Code § 12-302, which provides, in relevant part, that "when a person entitled to maintain an action is, at the time the right of

9

action accrues: . . . imprisoned[,] he . . . may bring action within the time limit after the disability is removed." D.C. Code § 12-302(a), (a)(3); *see* Def.'s Mem. at 5–7; Pl.'s Opp'n at 9–11; *see also Fletcher v. District of Columbia*, 481 F. Supp. 2d 156, 172 (D.D.C. 2007) ("Under District of Columbia law, the statute of limitations is tolled when the plaintiff is imprisoned at the time the cause of action accrues."), *vacated in part on other grounds sub nom Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30 (D.D.C. 2008). Plaintiff and defendant disagree, however, on whether tolling under Section 12-302(a)(3) ended when plaintiff escaped or recommenced when plaintiff was recaptured. *See* Def.'s Mem. at 5–7; Pl.'s Opp'n at 9–11. These are questions of first impression in the courts of the District of Columbia. A decision from the District of Columbia Court of Appeals and persuasive authority from other federal courts are instructive, however.

In *District of Columbia v. Tinker*, 691 A.2d 57 (D.C. 1997), a D.C. prisoner was mistakenly paroled on August 11, 1989; he was rearrested five weeks later on September 15, 1989. *Id.* at 64. He later filed suit against the District of Columbia for excessive force relating to his original arrest. *Id.* at 59. The District of Columbia Court of Appeals reasoned that "regardless of the validity of Tinker's initial release from custody in August of 1989, the fact remains that at that instant his disability of imprisonment was removed. Thus he was immediately able to pursue his claim against the District, and . . . the statute of limitations . . . began to run at the moment of his release." *Id.* at 65. Failing to find any authority to re-toll the statute of limitations upon Mr. Tinker's rearrest, the District of Columbia Court of Appeals refused to do so. *Id.* Like Mr. Tinker's inadvertent release, Mr. Earle's escape removed the disability and he was then able to sue the District. The statute of limitations began to run at

10

that moment. *See Jones v. Ritter*, 587 F. Supp. 2d 152, 159 (D.D.C. 2008) (citing *Arnold v. District of Columbia*, 211 F. Supp. 2d 144, 147–49 (D.D.C. 2002) and *District of Columbia v. Tinker*, 691 A.2d at 64)) ("A prisoner's disability is removed at the instant he is released from custody, at which time the statute of limitations begins to run . . . .").

Plaintiff argues that the reasoning of the Court in *Tinker* that "'once a prisoner is released . . . nothing prevents the plaintiff from commencing the action at that time'" is "inapposite to Mr. Earle's case" because "when Mr. Earle escaped from prison, he faced a very significant impediment to filing a civil complaint – his re-arrest and return to prison." Pl.'s Opp'n at 10 (emphasis removed) (quoting *District of Columbia v. Tinker*, 691 A.2d at 65 (internal quotation omitted)). That may be. But as defendant correctly points out, such impediment is of plaintiff's own making; because plaintiff seeks the equitable relief of tolling, he may not receive it with unclean hands. Memorandum of Points and Authorities in Support of Defendant the District of Columbia's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at 3–4 [Dkt. # 42] [hereinafter "Def.'s Reply Mem."].

Tolling doctrines are by their very nature "grounded in equity." *Glover v. Johnson*, 831 F.2d 99, 101 (5th Cir. 1987) (considering statutory tolling of Texas statute of limitations). "[I]it is axiomatic that one who would embrace equity must do so with clean hands." *Id.*; *see also Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945) ("[H]e who comes into equity must come with clean hands.") Plaintiff comes to this Court with unclean hands; he escaped from prison, and now asks the Court to recognize his risk of recapture while on the lam as an impediment to bringing suit worthy of protection in the nature of equity. This the Court will not do. "During the time that [plaintiff]

11

was at large he was free to file suit. That his fugitive status militated against his doing so lay entirely at his doorstep. The limitations shield raised by his arrest was lowered by his escape." *Glover v. Johnson*, 831 F.2d at 101.

Four circuits have directly considered whether an escape starts the running of a limitations period. All have concluded that it does, and all have further concluded that rearrest does not recommence tolling. *See Murphy v. Justus*, No. 92-1673, 1995 WL 156658, at *3 (7th Cir. Apr. 7, 1995); *Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994); *Holland v. Bland*, No. 90-5784, 1991 WL 11270, at *1 (6th Cir. Feb. 4, 1991); *Glover v. Johnson*, 831 F.2d at 101; *see also Burrell v. Newsome*, 883 F.2d 416, 420–22 (5th Cir. 1989). Each of these cases concerned state statutory tolling of statutes of limitations applicable to Section 1983 claims, and each of these cases relied on the unclean hands doctrine to reach its conclusions. *See Murphy v. Justus*, 1995 WL 156658, at *3 (concluding that an escapee "violated principles of good faith and may no longer seek relief from the statute of limitations"); *Dukes v. Smitherman*, 32 F.3d at 537; *Holland v. Bland*, 1991 WL 11270, at *1; *Burrell v. Newsome*, 883 F.2d at 420–22; *Glover v. Johnson*, 831 F.2d at 101; *see also Jones v. Ritter*, 587 F. Supp. 2d at 159 (citing *Arnold v. District of Columbia*, 211 F. Supp. 2d at 147–49; *District of Columbia v. Tinker*, 691 A.2d at 64) ("[T]he statute of limitations . . . continues to run even if the prisoner [who was released] subsequently is arrested or imprisoned."). On the basis of this persuasive authority and the D.C. Court of Appeals' decision in *Tinker*, the Court concludes that the statute of limitations began to

run on the day plaintiff escaped from Lorton and that tolling did not recommence upon plaintiff's rearrest.[3]

### C. Fraudulent Concealment

"Read into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir. 1977). Under the doctrine of fraudulent concealment, if a plaintiff "does not discover [his] injury because the defendant fraudulently concealed material facts relating to its wrongdoing," the running of the limitations will be tolled "during the period of such concealment[,] unless the defendant shows that the plaintiff would have discovered the fraud with the exercise of due diligence." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996); *see Richards v. Mileski*, 662 F.2d 65, 69 (D.C. Cir. 1981) ("[T]he concept of 'tolling[]' . . . applies . . . when a defendant fraudulently conceals the facts giving rise to the plaintiff's claim.").[4] To show

---

[3] Plaintiff laments the harsh result of this conclusion: "[I]t would mean that if a prisoner escaped for five minutes on the first day of his imprisonment, the statute of limitations would not be tolled for the remainder of the prisoner's confinement and would run as if the individual would never have been imprisoned." Pl.'s Opp'n at 10. "Surely," plaintiff continues, "the Council of the District of Columbia did not intend such a result," which smacks of unreasonableness, "when it enacted a law tolling the statute of limitations for a prisoner until 'the disability is removed.'" *Id.* (quoting D.C. Code § 12-302(a)(3)). "Legislatures," he says, "are presumed to act reasonably and statutes will be construed to avoid unreasonable and absurd results." *In re Nofziger*, 925 F.2d 428, 435 (D.C. Cir. 1991). But there is a difference between harshness and unreasonableness or absurdity. Because plaintiff comes to Court with unclean hands, there is nothing unreasonable or absurd about denying him the equity attendant to tolling.

[4] Plaintiff asserts that defendant's "failure to advise Mr. Earle of [his rights under the VCCR] constituted a continuing violation which also tolls the running of the statute of

13

fraudulent concealment, a plaintiff usually must show an affirmative act of concealment, *i.e.*, "'some misleading, deceptive[,] or otherwise contrived action' to conceal information material to the plaintiff's claim." *Sprint Commc'ns Co. v. FCC*, 76 F.3d at 1226 (quoting *Hobson v. Wilson*, 737 F.2d 1, 34 (D.C. Cir. 1984)). Thus, silence can constitute fraudulent concealment where a defendant has an "affirmative duty to disclose the relevant information to the plaintiff." *Id.* (citing *Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C. Cir. 1979)).

Plaintiff stresses that "Defendants had an affirmative duty to advise Mr. Earle of his VCCR rights yet never did so," and maintains that "[b]ecause Defendants fraudulently concealed Mr. Earle's rights under the VCCR from him, the statute of limitations tolled until he learned of those rights in 2004." Pl.'s Opp'n at 11. Even if it were true that defendant had such a duty, plaintiff's argument suffers from two major flaws: first, the alleged nondisclosure of plaintiff's rights does not amount to nondisclosure of a material fact giving rise to an Article 36 claim, and second, regardless of the nondisclosure of those rights, plaintiff could easily have discovered them on his own with reasonable diligence.

The purpose of tolling until a plaintiff discovers some information that was withheld in violation of a defendant's duty to disclose that information is to allow a plaintiff to bring an otherwise untimely suit against such defendant where the withheld and thus

---

limitations," but he also asserts that "because Defendants never advised Mr. Earle of his VCCR rights . . . , the statute of limitations was tolled." Pl.'s Opp'n at 11–12. Plaintiff thus intermingles the principles of accrual and tolling. A more delineated conception holds that the continuing violation "doctrine is implicitly characterized as an accrual doctrine." *Comm. of Blind Vendors of D.C. v. District of Columbia*, No. 88-cv-142, 1988 WL 129820, at *4 (D.D.C. Nov. 22, 1988) (discussing the "continuing wrong doctrine" and distinguishing between accrual, which "determines when the cause of action vests," and tolling, which "governs whether the statute of limitations should be suspended").

14

undiscovered information forms the basis of the claim. *See Sprint Commc'ns Co. v. FCC*, 76 F.3d at 1226. Thus, for example, in a case of medical malpractice, "the statute of limitations is tolled if the doctor or hospital violates a fiduciary duty to disclose material information to the patient" that would alert a plaintiff to an injury suffered as a result of malpractice. *Id.* This purpose only justifies tolling until a plaintiff becomes aware of his injury; it doe not justify tolling until a plaintiff is aware of the legal actionability of that injury. *See id.* Hence the restriction of this tolling rule to fraudulent concealment of "material facts," not causes of action based on those facts. *Fitzgerald v. Seamans*, 553 F.2d at 228.

Moreover, with reasonable diligence, plaintiff easily could have discovered his rights under the Vienna Convention, which has been in effect since 1969, long before 2004. Therefore, just as ignorance of one's rights under the Vienna Convention does not justify ordinary equitable tolling because one could discover those rights with due diligence, neither does it justify tolling for fraudulent concealment. *See, e.g.*, *Arraz-Saenz v. State of Colorado*, No. 07-cv-2046, 2009 WL 3162258, at *2 (D. Colo. Sept. 29, 2009) (declining to equitably toll statute of limitations where plaintiff belatedly discovered his rights under Article 36); *De Los Santos v. Police Dept. of Newport News, Va.*, No. 06-cv-367, 2006 WL 5616324, at *1 (E.D. Va. Aug. 22, 2006) (same); *Fuentes v. Benik*, No. 04-C-763-C, 2005 WL 83830, at *3 (W.D. Wisc. Jan. 3, 2005) (same); *Bieregu v. Ashcroft*, 259 F. Supp. 2d at 355 (same); *Williams v. Taylor*, No. CIV.A.02-18-JJF, 2002 WL 1459530, at *3 (D. Del. July 3, 2002) (same). The alleged withholding of information about plaintiff's legal rights under the Vienna Convention therefore does not toll the statute of limitations for claims based on those rights.

## VI.  CONCLUSION

Plaintiff's cause of action accrued on the day of his arrest on June 13, 1985.  The continuing violation doctrine does not apply.  The statute of limitations was statutorily tolled during plaintiff's imprisonment only until he escaped on September 19, 1988; tolling did not recommence when he was rearrested and reimprisoned.  The statute of limitations was not tolled by fraudulent concealment.  This action was filed in 2006 – 18 years after the statute of limitations began to run – and it therefore is barred by the three-year statute of limitations.

For the reasons identified above, defendant's motion for summary judgment will be granted.  A separate Order consistent with this Opinion shall issue this same date.


DATE:  June 29, 2011                        /s/
                                            PAUL L. FRIEDMAN
                                            United States District Judge